here on range versus atto number 21-2835. The cour Gottlieb. Morning. Your h the court. My name is Mic brian range. A little bit is in order for Mr Range  He had a pair of two year and a 3.5 year old child. are familiar with Mr Range arising around from your conviction that kind of b Um And so we would like t the heart of the matter. question we'd like to ask was range among the peopl covered by the plain text in light of what you're g already know you were goi Mr Range. All right. First range was not a violent o important under Bruin is who are um not violent, a disarmed under the Second nothing. Nothing in Bruin who can lawfully carry. U of course, I'm just a lea to say that in concurrenc books precedents from our bender up in uh in a two Uh are our courts position citizen model that is the between lawful and unlawf Bruin did not report to a and didn't abrogate that of appeals decisions. Are that? I would suggest we the third circuits. Um, v well thought out preceden requires us to look at wh Mr Range is a dangerous i was set forth as you reca bender up concurrence opi Judge Ambrose believe tha the more appropriate fact to get the more basic que Do you, is it your conten unconstitutional? It is u as applied to my client o to contend that is uncons everybody else. We believ is a virtuous citizen. Ev follow the existing law i court, we believe erred i Mr Range was that the off I say this because there to break down a fraud conv Mr Range's case was very fraud. Um, more specifica all his income. He can mo the taxpayers money withou I, your honor, I don't di did not have the right to sadly how he had an attor be here. In my opinion, h A. R. D. Which I'm sure a here are familiar with. S a virtuous citizen and he he satisfies all five tes um, undo an undue burden to determine whether or n jurisdictional consensus were only 25 states that charge of welfare fraud w Mr. Jones, is that anythi I'm sorry, Judge Krause, ruff. Uh, does does does jurisdictional consensus at this point? If we are on history and tradition, it does. And I think that court, of course, not kno was going to be decided t don't think, um, the judg at the cross jurisdiction range clearly wasn't dang today. He's had 26 years life. Um, well, let's, le you mean by dangerous or a little earlier about vi If we are to look at hist why shouldn't we draw fro and uh, and predecessor s for dispossession in situ  for example, uh, Quakers to take an oath of loyalt and I recall that and tha did allow it. But at some look at is that is that a to look at? Because there with respect to violent i buy back their virtue by a period of three years. we're not, we can talk se of rights. But if we're t and tradition and we have the relevant period that uh, you know, yes, when t offenses, but also where offenses such as the Quak you're not arguing that t them engaging in a violent I'm not. But if you recall is statutes or our statue allow individuals to not back in colonial eras, it firearms, not just for to family, but also to prote and our statutes to that steals does not have to l rights. So why isn't that in the in the relevant pe had broad discretion abou offenses were appropriate that that level of deferen Well, in the 1700s they d in Bruin, the court talke uh, statutes that have co beginning in the 19 sixti disarming people who are violent. That's roth. I k Uh, I wanted to ask you, what is your position the that that this does not q about 9 22 G. I'm sorry. says that that that it, u of a felony or of a state misdemeanor that carries than two years shall be c this statute. Yes, I unde says, but the relevant fa Mr Range has satisfied ar set forth in bender up an believe the trial workpla the one factor of the cros consensus. So we just ign the statute 9 22. No, we unconstitutional as to Mr Gottlieb. Are you saying up decision, which is the which included two compon virtuousness and those co determining whether a cri Bruin. I do not believe i uh, has struck down these it stopped. I'm just aski step in this first step, said only the virtuous ca who commit serious crimes What's a serious crime? A factors, some of which yo question for you. Do you bender up? It's still goo mean them part has been r asking you about the firs I believe the Bruin specif the two tier analysis is and it was a creation of not yesteryear. I recogni my question. My question asked Judge in answer, Ju Roth, you kept talking ab heard when it applied its of five factors, includin cross jurisdictional. I u responses to their questio of Bruin building still s that part of bender up s well, I'm arguing because decision. Bruin obviously know well after the distr and therefore it's my con of bender up survives Bru of interrupts the pods, B the people as those who a of people. Mr. Range is n he has a prior conviction in Bruin without any othe us to conclude Mr Range i this text of the Second A you need to look at the h or not he specifically wo rights in colonial times. based on the history is h his firearms rights in co if he has committed this times, he could have been or false pretenses or pot the document was forged i if it weren't and that's were punished by very sec we take anything from tha times had he committed th he could have faced a ma capital capital crime. I not be relevant today bec I believe in his situatio and it's a very specific from the government uh th to uh is a situation where had his firearms rights t Well, if we compare this if we compare this to Bru in Bruin was who could wh gun openly in public and there was as to did that not the condition here. U at it at a different angle the plaintiffs could carr they could have guns at h of taking them out of the is having guns at all. An is because teller has tol and et cetera, et cetera, on felons uh will be reco we have qualifications as in your position really t bender up that's saying o be looked at as a felon b characterized as a felon hasn't the burden shifted having proven that there the burden has shifted to first step to show that e felon, he should not be c a felon or that he should rights restored. And isn' which is beyond Bruin, wh analogy, I should be, is a felon or is he not a fe is yes, but you're saying should not, in spite of t he should not be consider of X, Y, Z. That is a ste And I think that gives us of precedence in a differ who is going to be persua your honor with respect t was not a felon. He was a he is defined as a felon be defined as a felon und important point is he was state law. Uh, but 9 22 g decided if you want to go Okay, that's what the stat but this guy should not f a felony. Aren't you taki anything that was decided you creating a situation requirement of order of p requirement of burden of I believe, first of all, I have to go back and say erred and determine the c consensus was not in our we get to the next four s So we win prior to brown. Mr Gottlieb, I'm, I'm a l go back to the question t was asking as well. If it that the factors that we up in bender up are not r keep going back to argue factors require that the reversed because the trial factors. Since our case w prior to Bruin, we had to and we followed the bender throughout our initial br but we're, we're having a this is a purely legal is issue, isn't it one that Novo? Yes, you are. And I need to necessarily get t in our favor under bender extent is bender up still to my case, it may be, bu it's not. Oh boy, I'm way Crouch's question. Go ahe I, I, you could answer Ju Okay. With respect to the today before this court, bender up decision is rel controls. However, we bel up, we carry the day rega said. I hope that answers trying to, you're asking us to ignore Bruin? No, n Bruin, Bruin, um, assists your view that the only t was get rid of the second No, I think it got rid of tier analysis. I believe said. But is it, is it yo there were sort of two st Right. Okay. And um, we'r that the court was clear the second step is out. R if you're saying Bruin, I that this two tier analysi two tier analysis. Well, say that the first step a of appeals have coalesced repeller? I don't know. I the court does say that. I'm misreading Berlin. Dr questions. I have no furt you discuss any further q Um, yes, just a couple. Y that because welfare frau wasn't an offense in the why the government here h But the court is also cle we're not, we don't need twin. We need an analog. have other offenses, uh, not just some of those we that relate to uh, disarm nonviolent, but had refus oath, uh, showing their t for the government, for f that had been set by the uh, and we also have a fa things like, uh, hunting there was disarmament for were, uh, looking for, uh geese, uh, on, on the riv Why don't we have suffici those types of cases to s it was historically permi violent and nonviolent of to look at those both vio there have been ways unde your virtue, if you will, and shades rebellion. Aga about reinstatement rather original finding. Yeah, I that allow. And that's my Krause's question was she the original finding of t involved violence in there a list of cases that did And how do you deal with we, we can go back to loo the individual, uh, passe in bender up and the issu the cross jurisdictional consensus and the trial c in my opinion, the correc consensus was that only 2 uh, found that, um, you'r a history? No, I'm not. I very much. And I'm a stud believe the history does But you're saying that th cross jurisdictional cons relevant to our analysis Okay. All right then. Um you for your argument. We Greenlee. Okay, please. T is joseph Greenlee. I rep firearms policy coalition and I would like to pleas of time for a rebuttal. U that you have the agreeme Mr Gottlieb to feed rebut Am I correct? Yes, Your H that, then that it will b proceed. So the district for two reasons. First, B and replaced the vendor up that the district court a  nonviolent persons such a vendor of multifaceted. H as examples about folks w take an oath. Certain peo certain religious faiths, who did not commit violen being disarmed. How do yo history? Yes, Your Honor. wars when loyalists were faithful to the patriot c the war loyalists as we d um, loyalists were very d there were extremely dang insurrections common throu during the war. We provid Maryland, Delaware and N Virginia governor recruit to fight alongside him in soil. And we have a corr somebody in the Patriot e about his wife and Childr um, loyalist in his commu were viewed as extremely they could get out of som being loyalists who would could um, what about the that that disarmed the Ca Well, those were during t war, which was um, so Cat time discriminated in the And during that war, they as agents or protestant l as agents of the foreign same religion as the Fren 15th. And so they also co allegiance to clarify tha um, with the French. And they were like, why doesn including their ability t the problem by taking an what was at issue was rea of a citizen to be uh, fa law, to be faithful to the a matter of physical viol danger, but danger to uh, uh, the colonies were try your honor, because it wa they were concerned about oath would exempt them fr that express that demonst not a danger that the loy these people were disarm throughout english and am people, there was a conce of the government that th and people would overthrow and concern your your pos uh, uh, uh, protestants a resolution revolution was posed a danger of, uh, vi under disarmament. Um, pr on that. And we see that Revolutionary War. So we' stand not disarmed? Well, concern. I mean, english representative of america were more narrow. I mean, example of these type of the concern was um, an up during the Constitutional proposal where, let me go were, were not those, tho uh, could establish, they Um, were, were they not d sorry, referring to the e the french and indian war to english history. We ca Yes, your honor. So, so c abuse sometimes. So that especially evident and in where they would use the disarming, dangerous peop and they would use it to opponents certainly. And the case, if we recognize affiliation was viewed as danger, potential disrupt order of that society, th we give that same deferen determination about, uh, a serious offense, like u proxy for the disruption that would support uh, di way as the proxy of being circumstances being prote with an Hutchinson, for e honor. That's another, I the extent that it's cons historical tradition of f which is a focus and a co and to go back to these e I mean, a lot of the time told us why they were doi 77 New Jersey, the legisl loyalists because it's da Pennsylvania. They said t quote, very improper and loyalists to be, to be ab arms. And we saw in the N the ratifying convention when they had their right it wasn't a wartime measu and indian war and the re wartime measures and we s down. Um, and the new Han allowed only for disarmam in actual rebellion. So t to talk about proposals, proposal that that the Su as, as something worthy o even if it wasn't adopted says crimes or real dange are two different buckets to go back to proposals, tell us how that doesn't that it was limited to on which I think you're equi Yes, your honor. So the p uh, came after the conven have allowed this disarma or real danger of public that is at least as reaso in my opinion to be read crimes. Um, for two reaso that point, all they had throughout american histor based on preventing, uh, trying to overthrow the g people going on to the te the public. So I think if evidence, uh, that they w first ever prohibition on and the way that statute almost seems that the rea is a catch all. So they'r about violent crimes, but that are not crime. So th crimes back then. Then th real danger of public inj you raise even that positi or so times in ruin, they people covered by the Sec the law abiders. They don law abiders. They say law people. So I don't know h read in law abiding means commit a violent crime. T able to do that in light choice. Sure, your honor. uses law abiding, it's ty that the plaintiffs in th so that they're establish in fact people protected by the Second Amendment a on with its analysis. So at any point is limiting citizens. I think they're are people protected by t and then it goes on with any significance to the f law abiding citizens no l the opinion? Well, certai to the extent that law ab unquestionably protected by the Second Amendment. nine where the court goes say that nothing in our n to suggest the unconstitu 43 states shall issue lic don't prevent law abiding from exercising their Sec to public hearing. Those states licensing regimes the issuance of a license committed a felony. Uh, a in federal law, no less. could the court be in say constitutional problem? We be more explicit by saying limited to law abiding ci they never say that. I th is just a, it's a footnot if this, if one of these schemes applied to these an issue in this case, th be constitutional. I don' laid out the test twice i And if they wanted some e I think they would have j said so. Well, they did s we, uh, we both in Bruin, Kavanaugh, uh, and, and t Alito, you know, give the the, the presumptively la statutes that reassurance Heller and Donald still s I believe that is a expre that it's not part of the laid out the test first o page 10 and then it said, the test on the swift opi time it said the governme of proving that it's regu with the historical tradi And neither time it provi saying, oh, except for th uh, laws that we identifi except for prohibitions f like that. So I think the everyone and because of t lawful language doesn't p Um, it's just another pos facially is constitutional that it's unconstitutional nonviolent fellows, facia constitutional as there a Is that your position? Ye And do I understand you c that, uh, that, uh, long on, uh, possession by la possession by felons, um, ruin? Well, I believe tha is an expression of their laws will be upheld. But longstanding part of that longstanding prohibition for felons. The federal f 27, 26 years, sorry, 27 y the law struck down and b to nonviolent felons. Tha the law that was struck d I don't think we can say ban is longstanding if th without giving it any kin How, how do you reconcile that, um, disarmament is who commit violent offens hunting misdemeanors on t uh, you know, whether it' uh, that hunting, um, as at night, uh, was a basis disarmament. Your honor. laws that would prohibit based on hunting. I know you were hunting with, if on somebody else's land w those firearms could be c it didn't prohibit you fr Um, so that's very differ prohibition that we're de So the, the hunting regula read as simply forfeiting were using at the time, u firearms as a more genera your honor. Okay. And it' the only individuals not in the second amendment ar a danger which you equate I'm correct to understand covers? Your honor. I bel put it most precisely and where he said people who for violence or who are h are likely to use firearms So I think there's some p they haven't demonstrated they demonstrated, uh, da or another that you could of the scope of the Second of the Supreme Court effor crime of violence. Your h um, that that has been an that johnson case. But I think it would actually a with the vendor of multif only we have, um, differe from case to case. And li don't know that anyone is factors will apply here w I'm sorry, but I mean of that fifth factor from ho harm be considered or not philosophy. So not only d different factors in this but we also have the fact weights from case to case want to ask you about fin that I tried to ask Mr Go and it's crap. Judge krau part one. And when I defi about its observation abo the factors for value and something is a serious cr brewing? I do not believe at least three of the fac relevant anymore under wh to to talk about vendor u those factors. Well, I wa it would be more clear. I would certainly be some i calls. Is this person dang I admit certainly there w close calls on that. But be a clearer issue than h all these factors that ch matters in this case. But is an as applied. Is this not what Bruin tells us w at. Bruin tells us we sho historically the kind of would have precluded the So why are we talking abo your honor wherever. So B the regulation that applie has to be consistent with of regulation itself has be consistent with histor that you cannot carry a g York City, whether you're or a bad citizen. And onc all they had to decide. T it facially. Now when you applied considerations, t the vendor of second step what what Bruin has said no longer valid. That is if you analogize Bruin to similar to Bruin of carry at it facially as being a is easily satisfied. If w look at statute, we don't at history because we look court is telling us today Now the argument here is valid facially, but that' is getting beyond Bruin. at as applied. Bruin look overall to look at the as of either the statute in  has been established in B we're on our own. I think the, the, the, um, learni our own cases to determi whether this is just a mi whether, uh, there should uh, uh, get the right bac But that, that has gone b aspects of Bruin. The as here are something that B about. Your honor. What B is that any firearm regula with the historical tradi and the firearm and, and, firearm, firearm restrict is consistent not only wi through what the Supreme we have to do. Well, at l multi factor test factors in history. Let's say for you ignore the Supreme Co quite the contrary. I'm s court and ensure that thi to misarrange is consiste tradition, but we're foll and Bruin is not an as app sets out the test that ap challenges. Yes. But if w consideration, we are goi we aren't bound by Bruin. honor. I believe that Bru Mr Nash and I forget the plaintiff, but I think it challenge. And but second second amendment regulatio with the history and trad you that you're saying ar history and condition. Wel test factors would still uh, the use of violence a Um, as far as the misdeme uh, the distinction, ther evidence that disarmament ever depended on another or felony. The sentence i to the maximum possible s evidence that that was ev the cross jurisdictional problematic because that at 2022 at what laws exis that nothing from the 190 because it's so far remov and even the late 1800s w to the extent that infor that had already been dis So if we, if we accept yo it's that the dividing li offenses. Uh, we, we, you of history and your, your would not need to distingu for violent offenses and, violent offenses. Is that correct? Your honor, there misdemeanors, um, that pe for historically or that, that the person cannot be So, yes, your honor, that' and sorry, uh, it's been any other questions? Go a So you keep talking about uh, danger. Uh, and, uh, b earlier, there were plent books at the time, includ Pennsylvania or states th of a person. Uh, not, not that itself reflected vil that characteristic as a Why, why couldn't, why, w just as well to saying, w disobey the laws, who hav for the rule of law by br by more than a year or mi than two years. Uh, that for someone who are dange less than someone who has religious belief that, th them to violate the law. that follows just too far of that, that historical. in Bruin, the court consi carry restrictions, restr periods and determined th to establish a tradition. maybe one law that can be way is just insufficient people can be disarmed if disregard for the law. Um has the necessary foundat history. Well, I'm what y one law, but uh, as we di to come up in, in numerou people who were, uh, by t nonviolent, but were unwil as to, uh, who, who had u that's, if that's a proxi is dangerous, why wouldn' the violation of the laws be an even more telling p danger because these laws these nonviolent people. of a suspected class. Thes people of a suspected cla to take the extra step of I'm not going to side wit against you. Um, so that' than just somebody who no criminal today who says w go online and start some government, that would ce what the people were conc 1777 New Jersey and and w has to be some, some dang a disregard for the law. I guess I'm, I'm, I'm sti how the, uh, if it's, if be affiliated with, uh, t with Catholicism, uh, you to, to take, uh, an oath why that in and of itself because they were concern would rebel against the g and another thing, some o laws, the french and indi war again, another wartim we need to go back to the proposal of their convenc people if they were engage I think that's a more nar relatively peacetime wher were factoring in both th and freedoms and also the from, um, a rebellion. So one, as far as, as far as uh, people being disarme I think that's the one we on to see what the founde Could we step back to one early questions? Uh, beca that there, there's discu and heller as well about is, is, is the assessment people a different step o Bruin than, uh, looking t analogy of, of, of an off things collapse into one honor. I believe it's the and Bruin clarified how w that. So Bruin said, and what heller did. We look of the second amendment t conduct is covered. And i go to the government's pr that the regulation is hi The people, as far as tha heller already did all th about the first half of t And it concluded with the a strong presumption that by the second amendment. go to the government's pr where that presumptively from, uh, about longstan for felons comes in as de on dangerous and unusual places and all that. So t historical tradition. Par there's a burden. True fa of people? Well, uh, ther about, um, non citizens a about, uh, I mean, I'd sa and people who present a for second amendment purp But there's a presumption and then the government h it's their burden to demi not included in that. Dr for counsel? I have no fu Kraus. Uh, can you give u of, um, felonies? Uh, whe they did not carry with t Yes, Your Honor. Um, actu the government depends on analogies to larceny. So merit supplemental brief pages seven and eight. Th on page 905, which referen discussion and the histor sites through the 17 90. a series of criminal laws crime. It was punished by up to 39 strikes and then recover up to four times person of the value of th stole. But he still, the still retain their arms r And we know from the 17 9 right after that, that no allowed to possess arms, an able bodied male betwe required by that Militia So, uh, how should we thi the level of generality o the analogy that we're di Is it, do we need to look or can we step back and t about, uh, offenses that violence or, uh, uh, as t have it, um, you know, fel offenses. At what level o Bruin do we need to identi Well, so this is a fundam right, of course. So it n we can't be taken away ju doesn't fall within that tradition of regulation. to find that common threa the tradition. So dangero certain offenses when unq say, like armed robbery, that kind of stuff, like that. And then, um, but I be left pretty vague. I m but dangerousness to the um, who's a little closer come in and the governmen to prove that they do fal of those restrictions. So your question perfectly w needs to be a little room challenges where the gove closer showing. But at th be described as something clearly violent acts, um, and there won't be a bunch challenges from attempted or something like that. S what is a dangerous offens apply the history? Well, who shows a propensity of who, um, you know, armed like that or, uh, likelih use firearm for illicit p demonstrate kind of, uh, puts other people intenti at risk. Um, something al But that doesn't breaking carry with it that, uh, t I don't believe so. Your gets four parking tickets of two years, it's consis law. But I don't think th likelihood that he's, tha is more likely to go comm act with a firearm than s get those parking tickets instead of having a firea assault against the Unite comes up with a scheme to the fisk, then there's no government. Would you say a danger? To the extent t the safety of the nation. you. Judge Cross. Anythin turn it over to the govern over the government. Thank Council. Thank you, Mr Gr Soter. Good morning. May i Kevin Soter from the Depa the government. I think i just very briefly take a s where we are here. We're cornerstone of federal gu And under that legislatio convicted of crimes punish a year of imprisonment ar from possessing firearms. carefully applied this co that the plaintiff failed that statute. And so we'r plaintiff's sort of last this court that Bruin som court findings step one a disagree that it did chan proof. Right? Our case la burden, uh, on, uh, the d and, uh, it's clear under burden rests with the gove Bruin certainly establish must affirmatively prove t is consistent with the nat tradition. Um, but this c that this firearm regulat is consistent with that t was also, of course, cons court's repeated assuranc about a right to belong t and with the Supreme Court endorsement of prohibition And so I think that's wher to in, um, in the in the in the subsequent publishe it. Um, this idea that on about a facially constitu lawful regulation, um, so my other five challenge s needs to make some sort o to overcome the showing t already made about the nu in which the statute can be applied. And I think t the way that this court p And it's also a point on court was in unanimous ag showing is necessary to o the Supreme Court has exp as lawful. But Bruin says isn't meant to be a regula Right? Correct. I believe other as well. And that's test that this court appli this court extracted from analysis, which, you kno not relying on what was t Um, and later now that we Uh, heavily, not exclusiv tradition. Uh, and, uh, a to, uh, to look for close analogs, um, not necessar uh, also not, uh, at a le that would sweep in, uh, So why shouldn't we then that, uh, that very close offense? And how have you that's the standard, how here with, uh, you know, small amount of funds fro to the first part of your I think the court made cl it was applying the histor previously been adopted i the same standard that th of course, at length, amo in Dindra. And this court looked for relevant analo And 10 of the 15 judges o at that time concluded th are what can today be con disarmament over the obje should be dangerous. Same amicus is relying on is t support that the tournament has changed about that hi nothing in the Supreme Cou in conflict with this cour which is I think the requi case law for when the Sup would overtake by any prec that Bruin is telling us analogies, not just the b offense punishable by mor are those closer analogies validity of the statute o as applied validity of th Bruin in fact go into an in the Supreme Court opin the Supreme Court was con the spatial validity of t with to the extent it was as the council suggested brought by people who wer court stressed in its opi as I think some of the qu out that it was talking a law abiding citizens. And the need to draw historica said that the question is the regulations burden a right to arm self defense. existing case law focused qualification that was in that the relevant histori serious offenses for disa analysis of the history w that that was that it was to reject this narrow foc I don't think that um you the question before this shows as an initial matte we were there, I think we more about the position a point that um that histor application of the statu full suite. Um the reason about this multifactor tes that there is finding prec we're following that prec the district court correc there's nothing in confli Supreme Court. It's the g that um this panel doesn' to discuss a uh a differen we are bound by uh by bin uh and Holloway and philo and uh it would require a to revisit the criteria t announced uh for a serious I think those criteria do Of course this court um h go so far as to have no d extent the court wishes t why the history explain a did for example why the h that this finding precede Um the court of course co think the discussion of h um is very helpful on tha and reinforcing conclusions on what the appropriate h are. And I think that the touched on some of those. it's helpful. I saw sort of historical analogies t endorsement of a serious dangerousness one. Um One the second amendment. Um proposal from the anti fe prominent there. Um but i also talked about proposa in Massachusetts. Um and are not limited to danger sort of bucket. I think t in this cases are disarma at the time of the colony we're not limited to viol And the third I think of here is the ubiquity of c and other serious, seriou offenses that would have the time of the founding. I think reinforce the cor conclusions, but it's not I think to revisit it. So the point that uh you kno a death penalty. It was n enforced. Uh So why is si was on the books, but as not the law of land helpf for the same reason that the last target. Uh the a the crime that the last t that were subject to with at the time of the foundi of the statute defer. And in line with conclusions of circuits under often u pre ruined step one histo focus. Um but this court outlier. If it were to sa locally defrauded the gov funds is someone who has right falls within the sc of the Supreme Court has to the law abiding citizens who show this sort of dis What do you say to Mr Gre uh there are felony offen back on to say uh there w There may have been other punishments, but disarmam them. If that's uh if tha and we have to look sort to whether uh our our fou that disarmament was appr have to go through the sa offense analysis today? N the court already rejecte by offense analysis, both in history and as well as the administrative nightm that would cause on the c inconsistent with the his that um that underlies th in vendor and Holloway an is precedent on precedent on this very specific qu challenges to 9 22 G one, been undermined by the Su anything has been reaffir it would be extraordinary based on what amounts to argument that was being m interrupt. And of course that um there was disagree about um what the right s the history shows. But we that we have this establi know, we're living with i why it um why it support decision in this case. I up in the analysis. I wan because what I'm hearing is parts of interrupt sur informed by it. We don't analogies. I think I've h which seems to be inconsi misheard you with what th let me back up. The first says, does the second ame give protection to the in argument concerning just just that point, the seco law abiding citizens, whe the question of text hist of the two, this court ha already ruled based on ex of felon disprofessional discussion that we got la are cut, you got second a you're a law buyer. Binder word law buyer, use the w Are they equivalent or is wrong frame? I think Bind word virtuousness as a, a of what the historical an controlling opinion. Um a that this court drew to u long standing federal pro on balance of action was restrictions on um nonvir the understanding that th guarantee um to people wh that group. So we've got the non virtuous. Those a are groups that are not c privileges. And I underst I think those are certain and there I imagine there I'm not here trying to go catalog of which sorts of be um will be consistent as a fresh matter. I did to clarify what I was say analogies was that this p the analogical reasoning Um under step one of its which was drawn from the of heller that brewing ma So it's not that it's unne a blank slate is that we on a blank slate. Let me if if we were to agree wi Second Amendment does not and non virtuous. Don't w the individual seeking pr conviction doesn't at the Can we just stop there? U the gloss on virtuousness after vendor up and it co in our view is the one un test would permit someone do not fall within the hi group. Um and that's, you report conducted in the w it falls on the under the to protect their rights. said it would be the gove to do this again. I think the the government has al by showing the number of that were discussed by th for um disarming people c crimes. And having met th what finger up recognize a strong showing by the i  presumptively Bob can't c it takes a sort of strong before. I think the court on that point. Um Judge H be strong showing necessar talking about vendor up r about brewing because bri to put any burden and ple wrong on any burden on th invoke their their rights says that someone does ha text at which point the g burden to affirmatively is consistent with histor as a text question or a h this court's decision and why a someone who commite can be disarmed. And of c goes beyond that, I think about the sorts of more s crimes generally to fraud government of its funds. we talked about a bit ear case law, both from this and from other courts um and that's a challenge in I want to go back to brin first part says when the plain text covers an indi Constitution presumptively that conduct. Your argume conduct is not covered by it's a non law abider, a historically uh those who were disarmed. However, t The court must then if th justify its regulation by it is consistent with the tradition of firearm regu that second element in th the court has to apply th last part. And I think th clear it is a combination that leads to the conclus citizens um include indiv serious crimes. And that' the Supreme Court has sai law abiding citizens and disarmament rules. So wher these vendor up considerat framework? If you were wr where is that going? Beca if you were given the pen you would write someone l not covered because he's is not virtuous. Historic serious crime of sorry, c disarmed. Where is vendor in this? I think we're ve there's the controlling o the historically barred c commit serious crimes. Be to evaluate seriousness. looked at several factors is the type of serious cri by this analogy to um non of the founding. Um and t know, Judge Amber went th this court has again appl Holloway last part. Do yo that to conclude that som requires us to take an ex that person committed a s think that the vendor up survived ruin? Yes. Why d because this court was al exactly the sort of histo Heller had already demand reaffirmed. I think Bruin clear that they find the of power, not changing it standard of the court's o were grappling with. What drawn to analogy to wheth felon in possession, fire founding or whether, wheth of the sort that Mr Range to disarmament. Which reg you looking at? I think b of the statute in this ca sort of the framework of I think, you know, our po finding. Um, it's the ana the non law abiding not b the scope of the right. U court has has made clear of the scope of the right Um, and that's and that's I mentioned before, you k about what the right test is serious. And that was and vendor up. But the co That's not my question. I rock. It's my understand here are not questioning the facial constitutiona They're challenging the a facially we're saying 9 21 doesn't that satisfy Brui then goes on to an individ of are these guys really felons? Uh, should these right to have their, thei But that the, but the fac of 9 21 is not questioned 9 21 to 9 22 is not quest applied. And that's where then can make the conside of whether um 9 22 G is v historically we need to l or not done back in the i your honor. And I think t the analysis that this co in its previous cases and sorry that Bruin doesn't instruct how to evaluate sort of regulation of con amendment. This court did based on the Supreme Cour of these sorts of laws an assessment of history and that history was that the serious crimes supported disarmament. Then once yo um conclusion that the st on its face because it is who committed serious crim an appetite basis can get has managed to distinguish historically barred class sort of issue that the cou But the issue here is not on its face. The issue is is applied to the to Mr. your honor. And that's a that this court adopted i to get in holloway. It's to go back to the question I'm not clear what regula as applied. The governmen us. Is it a regulation wh broad can be disarmed? Uh rush? Uh, anyone convicte a felony offense, punisha misdemeanor, punishable b two years. Uh, can be dis amendment. We, which is t we should be thinking abo this case? I think it's b I don't mean to sort of n but I do think it's it's and under the correct ana because this statute, whi from possessing a firearm of a crime punishable by is the sort of broad brush are talking about. So we'r that. But we're also here person is bringing an app to that regulation. And t this court dealt has dealt cases and has developed t we were talking about. Um a more categorical analog crime in each case. So th ensures the courts are in each individual person de specific to their crime. accounts for the possibli will not be within the sc supported. So, so uh, you are uh, offenses that wou of a felony under, uh, fo Um, but that would not be the second amendment, uh, it as a matter of this ci think that conclusion is working from a blank slate we would have a different And that's for the reason shown in the diversion op is that the court, the me had different conclusions just looking at history a what do we conclude? Um, that careful analysis tha and it's free sort of div controlling conclusion is are the touchstone and th by this current statute a that precedent. And so wh seriousness based upon th chart considerations, whi Bruin can cross jurisdicti Bruin given its instructi our history? Yes, I think finding precedent because in, it's in conflict with purposes of resolving thi work can also rely on the um, regulations of, of, u and the like. Um, and then look to, um, I think ther that the, the maximum pen specs for a crime, which five years. And um, you k called a misdemeanor is a Pennsylvania law. Um, but is sort of once they want at the label they had ava I think that's also um, r jurisdictional consensus too, because it shows tha even close to an outlier maximum sentence for peop defraud the government. O to those more recent cros points to say that we are that that is similar to h crimes were treated histo conduct was illegal then followed. Yes. I think th analogy to draw on. Of cou through in the brief. Som which again come from a l a very similar offense in also from I would refer t Circus opinion in Medina explains why under what w a text in history approach was, I think it was, um, or failing to report inco Um, the Fourth Circuit de the Seventh Circuit decisi cases all involve, uh, re Um, sometimes really quit as how far in time from t the challenge and how muc all concluded that under of 9 22 G one or in the c case of state parallel. I were to look at is the fe bar brewing tells us cons a like regulation which a the asylum harm existed i It appears from the brief research, there was no fl possession bar. But the n harm would have understan people who, who, uh, who pose a risk. This court t you can't find a distinct regulation addressing thi challenge regulation is i amendment. What do we do I think the court recogni for historical analogies it's found is that there that at the time of the f had committed a serious of a constitutional right to the court has exhausted t that conclusion and has r the idea that violence or the touchstone. Um, and I there's, I think, um, in we've talked about the re on law abiding citizens, was discussing how to dra Bruin said, the question burden a law abiding citi self defense. The court w call into question. Um, a cases, including the appl 22 G one, which of course the Supreme Court has mul as the sort of long tendi is consistent with the ap by Bruin. Thank you counc any further questions? Ye are to focus, uh, on the Uh, what do you do with t Um, the, uh, 1970 larceny Greenlee pointed to if th of serious offenses where did not include disarmame we just, uh, say that the showing of disrespect to the law, uh, that a gener law has a sufficient hist think this court starts b precedent, which we've exp and then flashed are the relied on the analogy bet of defense and a common l securely at the founding. other case where if a lit were to say a legal concl was erroneous because I h or some new examples or p on an example that was al I'm not sure in the case example, just as in that would adhere to precedent I think the court made th and flashed are, um, in e started to say it doesn't means we cannot without g and legitimacy of the jud revisit the position so r by majority of our own co And, and these issues are that that were before the were considered thought a projected. Well, that's t that those things survive arguendo that ruin did cl So, uh, as we look back f and tradition that would a couple of $1,000 in wel didn't even carry with it time? What is the histori would satisfy Bruin? I thi to adopt that assumption, that's a situation in whic an opportunity to discuss as well as our briefs foc the first question about remain finding. Um, I thi look to some of the analog that precedent and some o that was coming up earlie um, about, you know, laws um, understandings that w to the second amendment, proposal that was specifi heller as an influential of the second amendment t to analogical treatment o time of the founding, whi look to in flashcard as w Bruin telling us that at that we need to address t a sufficiently similar off is how the regulation bur law abiding citizens, rig looking at this offense i the answer to the how and that you think govern? We answer, of course, is that a law abiding citizens, r burden a law abiding citi Um, and that's what the c in the existing cases. Um the court is looking for do think those are covere various opinions that hav and interrupt in Holloway and we're talking about h as finding precedent. If clean and we were on a bla I think we'd be talking m the analogies in favor of by a judge. But the reaso about that is that we ack finding precedence that a amplified challenges to t Gottlieb has, um, uh, ma that, uh, it's inherent i uh, constitutionality, th for restoration of rights that here? So, of course, opportunities for restorat statute. But I think it's law, the court makes clea one of that there is no h exactly the phrasing that support for, um, for this who commit a serious offe their rights later. Um, t one of the considered jud in overruling that aspect case, as was the court's rather than violence. Thes have received considered consideration and remain possible. So how would yo Um, you'll, you'll recall that members of the court up. Uh, there are example would qualify as a felony statute. Um, you know, th as, uh, you know, uh, repl that's fallen on the floo Uh, and, uh, I take it, y there's enough room, uh, the test for analogy is t offense would not, uh, be matter, uh, that a disarm there would be deemed unc right? I want to make sure answer. So I think the tes about is the vendor up te how, what the result would up test for those examples are classified as felonies this first decision and f a generally conclusive det also have the portion at applies directly here abo of offense we're dealing defrauding the government that's just not the type a constitutional right. U over a congressional dete class of people should be the test? I understand yo is permissible here. Uh, there may be other offens permissible. What's the p What, what is the differen we're, if we're looking a ranging as, uh, simply, u a serious offense. Uh, ho that, that distinction am of offenses that have bee to constitute felonies. I issue that the, uh, decisi to resolve. And what the from Judge Amber said is factors which are not exh us assess, um, how seriou determined the crime shou how serious the crime was there that legislative ju which is the historical p relied upon to evolve. An these factors came from i that we're tying to histo for that we're talking ab Um, but we're also trying how serious of a crime di think this was. Does that at, uh, uh, there's their defendant? I think it can it also, you know, is not case by case analysis to some category that a part fits in that can plainly Um, and so here that cate of as fraud offenders. Cer also be thought of as peo the relevant factor of th showing that this five ye that made Mr Raines eligi is not an outlier. It's i Does it still matter what actually received? I think I explained why that's of informative factor. Um, b under history and traditio the offender. Um, but of some relevance under, unde and you know, it was menti itself and the reason why But it is often not going informative as the maximu legislature set. And I th helpful on that point. How analogy for those kinds o disarming someone? Wasn't as we look back at these the colonial period and j the most relevant period, Court. Uh, where is there basis for looking to uh t time that someone receive or not they're going to b I think this court has ex its cases talking about t of a felony. Um, talking of legislative judgments as a felony and what the have evolved. But when yo touchstones of serious cr analogies to the founding to look at today includes the legislature is dealin Um, and of course, again, the court is looking at t fresh. Um, I think we wel to discuss that further u because, um, our point he have been considered thoug published decisions and b until last term. There's there's a conflict as wou with Bruin. That's just t any further questions? I Thank you. That's crap. N capital. Thank you very m We will hear you for a sho you. I just wanted to qui analogies. First is a quot says it's earlier generat societal problem, but did different means. That cou regulation is unconstituti to point out. That's what that did not punish that Secondly, I'd like to not historical analogy provid a 17 86 Massachusetts law of our brief and that's d actually stealing money f there. If a tax collector money from the public and it to the government, kep it for himself. Then the an estate sale, sell off goods to recover the amo but the tax collector's f exempt from that sale. An took the money from the e it for himself rather tha the government. So if he government, his firearms the state sale as well. A consistent with the 17 92 Act, which exempted firea distresses execution or s or for the payment of tax quite stealing money from it's not paying money to belongs to it. And they w their arms to. If there's that's all your honor. Oka panel. Thank you all for today. Um, and for being so we could proceed to co